IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| RETHINK35, TEXAS PUBLIC INTEREST RESEARCH GROUP, AND ENVIRONMENT TEXAS<br>*Plaintiffs*<br>vs.<br><br>TEXAS DEPARTMENT OF TRANSPORTATION; AND MARC D. WILLIAMS, IN HIS OFFICIAL CAPACITY AS EXECUTIVE DIRECTOR OF THE TEXAS DEPARTMENT OF TRANSPORTATION<br>*Defendants* | CIVIL ACTION NO. 1-cv-22-00620 |

**ORIGINAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1. Rethink35, Texas Public Interest Research Group "(TexPIRG)", and Environment Texas bring this civil action against the Texas Department of Transportation ("TxDOT"), and Marc D. Williams, in his official capacity as its Executive Director, for declaratory and injunctive relief pursuant to the provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, and the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et. seq.* and its implementing regulations.

2. This litigation arises from the Defendants' decisions to expand and widen Interstate Highway 35 between State Highway 45 North and State Highway 45 Southeast. ("I-35 Project", "I-35 Capital Express Program", or "the Project"). The I-35 Capital Express Program proposes to widen and make other alternations to 28 miles of I-35 between SH 45 North and SH 45 Southeast. Defendants have improperly divided the Project into three smaller projects or segments—North, Central, and South. The North Project covers the section of I-35 from SH 45 North to U.S. Route 290 East. The Central Project involves the portion of I-35 from U.S. 290 East to SH 71/Ben White

1

Boulevard, with additional fly overs at I-35 and U.S. 290 East. Lastly, the South Project comprises of the section of I-35 from SH 71/Ben White Boulevard to SH 45 Southeast.

3. Rethink35, TexPIRG, and Environment Texas file this lawsuit to challenge the arbitrary and capricious actions by a state agency and its officials that are attempting to circumvent the procedural and substantive requirements of NEPA and the constraint on arbitrary and capricious decision-making found in the APA.

## I. JURISDICTION

4. This action arises under NEPA, 42 U.S.C. § 4321 *et. seq.*, and its implementing regulations, especially those of the Council on Environmental Quality ("CEQ") found at 40 C.F.R. § 1500 *et. seq.*, and the Federal Highway Administration ("FHWA"), 23 C.F.R. § 770 *et. seq.* Judicial review is sought pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§701–706. This Court has jurisdiction over the case pursuant to 28 U.S.C. § 2201 (declaratory judgment), 28 U.S.C. § 2202 (injunctive relief), and 5 U.S.C. §§ 552, 701–706, for violation of, inter alia, the APA and NEPA.

## II. VENUE

5. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b), (c)(2), and (e) because the location of the property where the proposed expansion of I-35 is to take place is located within this district, Defendants reside in the district maintaining offices at Texas Department of Transportation 125 East 11th Street, Austin, Texas 78701. Rethink35, TexPIRG, and Environment Texas members reside in the district and these organizations maintain offices within the district. Rethink35 maintains an office at 92 Navasota Street, Austin, Texas 78702. TexPIRG maintains an office at 200 E 30th Street, Austin, Texas 78705. Environment Texas maintains an office at 200 East 30th Street, Austin, Texas 78705.

## III. PARTIES

6. Rethink35 is an association of supporters sponsored by Safe Streets Austin, TexPIRG is a non-profit corporation, and Environment Texas is a citizen-based environmental advocacy organization. These organizations are made up of citizens concerned about public health and safety of residents living directly adjacent or in the immediate vicinity of the proposed I-35 Capital Express North, Central, and South projects.

7. The Texas Department of Transportation is a state agency of the State of Texas and may be served at 125 East 11th Street, Austin, Texas 78701–2483.

8. Marc D. Williams is sued in his official capacity as Executive Director of the Texas Department of Transportation and may be served at 125 East 11th Street, Austin, Texas 78701–2483.

## IV. STANDING

9. Rethink35, TexPIRG, and Environment Texas are organizations whose supporters are citizens living directly adjacent or in the immediate vicinity of the proposed I-35 Capital Express North, Central, and South projects. Many supporters will be directly affected by the negative impacts associated with this highway expansion.

10. Rethink35 is an organization whose supporters are committed to exploring alternative community proposals instead of expanding I-35 in Austin. TexPIRG is an organization whose supporters are dedicated to preserving and advocating for a healthier and safer community. Environment Texas is an organization advocating for a greener and healthier communities on behalf of its supporters.

11. Rethink35, TexPIRG, and Environment Texas have supporters that will be directly affected by the air pollution, noise pollution, and other impacts from the proposed expansion of

these projects. Thus, the citizens within these organizations are uniquely affected by this proposed action of TxDOT.

## V. BACKGROUND FACTS

### a. Initial Studies and Scoping

12. Between the late 1980s and early 2000s, TxDOT Austin District undertook the I-35 Major Investment Study that proposed improvements along I-35 from Georgetown to Buda, Texas. This study concluded in 2004. However, due to funding issues, implementation problems, and lack of community support none of the improvements identified in this study moved forward.

13. In 2010, the City of Austin committed to funding a $1.5 million feasibility study to explore improving operations on I-35 through downtown.

14. A year later, TxDOT Austin District launched the Mobility35 Program, also known as the I-35 Capital Area Improvement Program that focused on modifications to I-35 in Travis, Hays, and Williamson counties.

15. In 2013, TxDOT released the I-35 Capital Area Improvement Program Corridor Implementation Plan for Travis County, which identified modifications for I-35. A year later, an updated plan was released that included Travis, Hays, and Williamson counties.

16. In 2015 individual projects identified on the north and south ends of the study area are environmentally cleared as part of the Mobility35Prgram and construction begins accommodating additional mainlanes as part of the design.

17. Between 2016 and 2017, TxDOT conducted "open houses" for the North16, Central7, and South10 projects. The current I-35 Capital Express North, Central, and South projects considered some concepts and feedback from these projects.

18. The Texas Transportation Commission approved state and federal gas and sales tax dollars for the new I-35 Capital Express North and South projects in 2019.

19. In 2020, the Texas Commission approved $3.4 billion in discretionary funds for I-35 Capital Express Central project. Moreover, the Capital Area Metropolitan Planning Organization ("CAMPO") committed $633 million to the Central project.

20. After the Central project became fully funded at $4.9 billion, TxDOT launched an Environmental Impact Statement for the project.

21. Public Hearings for the North and South projects and the second public and agency scoping meeting for the Central project were hosted in 2021.

### b. FHWA Delegates NEPA Duties to TxDOT

22. On December 16, 2014, TxDOT took over responsibilities for NEPA compliance under a Memorandum of Understanding ("MOU") with the Federal Highway Administration pursuant to 23 U.S.C. § 327(a)(2)(A). Appropriately, the same federal environmental and administrative law standards that would otherwise apply to federal agencies, like FHWA, in this context apply to TxDOT. See id. § 327(a)(2)(C) ("State shall assume responsibility under this section subject to the same procedural and substantive requirements as would apply if the responsibility were carried out by the Secretary."). In accordance with the MOU, TxDOT became the lead agency for the I-35 Capital Express North, Central, and South projects environmental reviews. Additionally, TxDOT explicitly waived the Eleventh Amendment immunity and consented to federal court jurisdiction for all responsibilities assumed pursuant to the MOU. As of December 9, 2019, the MOU has been renewed for another five years.

23. As detailed in this complaint, TxDOT has failed to fully comply with their duties under NEPA's environmental review, the Council on Environmental Quality's NEPA regulations,

and FHWA's environmental review regulations. As a result of TxDOT's failure to comply, TxDOT has significantly increased the environmental impacts that citizens and residents along the project areas will be exposed to, impacts that are a direct result of this project. Furthermore, TxDOT has failed to comply with the substantive requirements of NEPA's environmental review, the CEQ's NEPA regulations, and FHWA's environmental review regulations in violation of the laws and regulations.

    **c.** **TxDOT's Environmental Assessments and Findings of No Significant Impacts**

24. Between 2019 and 2021, TxDOT conducted environmental studies for the I-35 North and South projects. The environmental studies are currently ongoing for the Central Project.

25. TxDOT held open houses for the North and South projects. The open house for the North project was held on October 24, 2019 and a virtual option was available for October 24 to November 8, 2019. The open house for the South project was held on October 17, 2019, with a virtual option available from October 17 to November 1, 2019.

26. In March 2021, TxDOT released the draft environmental assessment ("EA") for the South project. In April 2021, TxDOT released the draft EA for the North project.

27. For the South project, TxDOT then held virtual and in-person public hearings that began on April 27 through May 26, 2021. Virtual and in-person public hearings for the North project, began on May 10 through June 10, 2021.

28. In December 2021, TxDOT released the final environmental assessments for both, the North and South projects.

29. On December 17, 2021, TxDOT signed the Finding of No Significant Impact ("FONSI") for the I-35 North project. A few days later on December 21, 2021, TxDOT signed the FONSI for the I-35 South project.

30. On January 28, 2022, TxDOT published its Notice of Final Agency Actions on Proposed Highway Projects in Texas which included the I-35 North and I-35 South projects. 87 Fed. Reg. 4708. This lawsuit is timely filed within the applicable statute of limitations. 23 U.S.C. § 139(*l*).

**d. TxDOT's Still Pending Central Timeline**

31. TxDOT held the first virtual public scoping meeting for the I-35 Central project November 12 to December 31, 2020. TxDOT aimed to gather input on the project and to provide the public an opportunity to review the project and present comments. Another virtual public scoping meeting was held March 11 to April 9, 2021.

32. A community working group, CapEx VOICE, was put in place to conduct a couple meeting. Some meetings were held on: May 26, 2021; July 12, 2021; September 30, 202121; December 14, 2021; January 25, 2022; and April 12, 2022. The meetings allowed TxDOT to discuss certain project aspects, including accommodation for bicyclists and pedestrians.

33. Additionally, TxDOT held pop-up events on: August 6, 2021; March 22–24, 2022; April 10, 2021; and April 23, 2022 to provide updates on the project, among other information.

34. On August 10, 2021, TxDOT held a public meeting. Afterwards, a virtual public meeting was held from August 10 to September 24, 2021.

**e. I-35 Capital Express Entire Project Details**

35. I-35 Capital Express North spans along I-35 between SH 45 N to US 290 E. This project adds one non-tolled high-occupancy vehicle ("HOV") managed lane in each direction. In addition, North project, reconstructs bridges, adds a diverging diamond interchange at Wells Branch Parkway, adds pedestrian and bicycle paths, and makes other mobility changes.

36. I-35 Capital Express Central is about 8 miles long down I-35 from US 290 E to SH 71/Ben White Blvd. This portion removes the existing I-35 decks, lowers the roadway, and adds two non-tolled HOV managed lanes in each direction. This segment also reconstructs east-west cross-street bridges and adds pedestrian and bicycle paths.

37. I-35 Capital Express South covers I-35 between SH 71/Ben White Boulevard to SH 45 SE. The segment adds two non-tolled HOV managed lanes in each direction and reconstructs bridges. The project also adds pedestrian and bicycle paths.

## VI. CAUSES OF ACTION

38. The facts set forth in paragraphs 12 to 37 are adopted herein.

**CAUSE OF ACTION NO. 1: TxDOT VIOLATED NEPA BECAUSE IT IMPROPERLY SEGMENTED THE I-35 PROJECT INTO NORTH, CENTRAL, AND SOUTH SECTIONS**

39. Under NEPA, segmentation of highway projects is improper when it is done to avoid giving adequate consideration to environmental effects.

40. According to FHWA regulations, any action evaluated under NEPA as a categorical exclusion ("CE"), environmental assessment ("EA"), or environmental impact statement ("EIS") must: (1) connect logical termini and be of sufficient length to address environmental matters, (2) have independent utility or significance, and (3) not restrict consideration of alternatives for other reasonably foreseeable transportation improvements. 23 C.F.R. § 771.111(f). Independent utility or significance represents that an action is usable and is a "reasonable expenditure even if no additional transportation improvements in the area are made". 23. C.F.R. § 771.111(f)(2).

41. Additionally, the CEQ regulations state that agencies evaluate "proposals or parts of proposals that are related to each other closely enough to be, in effect, a single course of action." 40 C.F.R. § 1502.4(a).

42. TxDOT states that the I-35 Capital Express Program improves 28 miles of I-35 between SH 45 North and SH 45 Southeast. Program features include relief of congestion; enhancement of safety; improve traffic management, operations, and regional mobility; enhanced bicycle and pedestrian paths; improve movement of freight; and more. The Program is then divided into three portions—North, Central, and South projects. According to information regarding the I-35 Capital Express Program, it appears that TxDOT's main concern regarding I-35 is overall congestion and mobility.

43. In order to fully address congestion and mobility on I-35, each project (North, Central, and South) relies on the building of subsequent segments. Congestion will only be alleviated, and mobility improved if all three segments are completed. These three projects are so intertwined and completely rely on each of the other projects to be built. Thus, each project—North, Central, and South—does not have independent utility.

44. Moreover, segmenting this project into three smaller portions severely limits the number of alternatives that can be considered for each project. Segmentation of a project cannot restrict the consideration of alternatives for other reasonably foreseeable transportation improvements. The North, Central, and South projects are all reasonably foreseeable transportation improvements, as they can all be found in the Texas Uniform Transportation Program ("UTP"). The UTP is TxDOT's 10-year plan guiding transportation development in the state.

45. Due to the way TxDOT segmented the I-35 Capital Express project, alternatives will be restricted. All alternatives are dependent on those chosen in each project (North, Central, and South projects). For instance, the North project would restrict the alternatives considered for the Central and South projects, and vice versa. A highway—especially one through a major urban and downtown area—needs to be cohesive in order for traffic to flow and congestion be avoided.

46. Furthermore, alternatives like the one presented by Reconnect Austin are more difficult to implement or even potentially unviable options due to the improper segmentation. Reconnect Austin proposes that the portion of I-35 that runs through downtown Austin be buried and capped to allow for more green and recreational spaces. This proposed alternative addresses congestion, mobility, connectivity, and other environmental impacts. However, alternatives like Reconnect Austin may be restricted as viable options due to the interconnectivity of all the alternatives for the North, Central, and South projects.

47. All three projects aim to include non-tolled high-occupancy vehicle ("HOV") managed lanes. HOV lanes are interconnected and must run cohesively. Again, the alternatives analyzed and considered for each segment must all align with the alternatives considered in the other projects, which limits the alternatives for each project. TxDOT has restricted the alternatives it can consider for each I-35 project.

48. The I-35 North, Central, and South projects do not have independent utility and each project restricts the consideration of alternatives for the other projects. Therefore, TxDOT improperly segmented the I-35 Capital Express project. TxDOT acted arbitrarily and capriciously, and not in accordance with law when it improperly segmented the I-35 Capital Express project into three projects—North, Central, and South. 5 U.S.C.A. § 706.

**CAUSE OF ACTION NO. 2: TxDOT VIOLATED NEPA BY FAILING TO CONDUCT AN ENVIRONMENTAL IMPACT STATEMENT**

49. The CEQ and FHWA regulations require an Environmental Impact Statement ("EIS") for actions that significantly affect the environment. 40 C.F.R. § 1502.1; 23. C.F.R. § 771.115(a).

50. An EA is defined as "a concise public document…" to "support its determination of whether to prepare an environmental impact statement or a finding of no significant impact…"

40 C.F.R. § 1508.1(h). If an agency prepares an EA and determines that the proposed action will not significantly affect the environment, it may prepare a FONSI.

51. A FONSI briefly presents "the reasons why an action…will not have a significant effect on the human environment and for which an environmental impact statement therefore will not be prepared." 40 C.F.R. § 1508.1(l). The issuance of a FONSI acknowledges that the action under review has no significant impact on the environment and acknowledges the agency has fulfilled its NEPA obligations. Issuance of a FONSI is also an acknowledgment that the agency has fulfilled its NEPA obligations. Additionally, the issuance of a FONSI also constitutes a final agency action that is subject to review under the APA.

52. However, if an agency determines that the proposed action significantly affects the environment, then the agency must commence the preparation of an EIS. 23. C.F.R. § 771.119 (i). All actions that significantly affect the environment require an EIS. 23. C.F.R. § 771.115(a).

53. The I-35 Capital Express projects—both individually and collectively—significantly affect the environment requiring that TxDOT prepare an EIS. The Capital Express projects each fail to fully evaluate a variety of environmental impacts including impacts on water resources and noise quality.

54. TxDOT fails to fully evaluate the impacts on water resources that result from the North and South projects. For instance, the North project overlays the Edwards Aquifer Transition Zone. The Edwards Aquifer is the main source of water for San Antonio, Texas and the surrounding areas. Surface water infiltration into the aquifer may occur from the Transition Zone. TxDOT states that best management practices ("BMPs") are not required by the TCEQ Edwards Aquifer Rules. TxDOT does not mention any analysis that has been completed or mitigation that will be provided to prevent contamination of the Edwards Aquifer.

55. Both, the North and South projects, significantly impact the water resources within their respective project areas. For example, the South project impacts twelve water features in the project area. TxDOT has failed to fully analyze the impacts that each project would have on the respective water resources within their project areas. The North, Central, and South projects all have significant impacts on water resources within their project areas. Hence, TxDOT should have prepared an EIS and its failure to do so is a violation of NEPA.

56. The South project also significantly impact the noise quality within their respective project areas. Noise levels predicted by TxDOT in the South project EA exceed 66 dBA at most locations along the proposed highway expansion project. Noise levels that equal or exceed dBA are considered to create noise impact. The South project shows noise impact to 35 receptor locations along the project area. The EA proposes a noise abatement barrier for only 2 of the 35 receptor locations where noise levels are exceeded. The EA lacks any description of the types of impacts that would occur on those 33 locations for which noise abatement was not provided.

57. The North project EA states that noise impact to 52 receptor locations along the highway expansion area. The EA proposes a noise abatement barrier for only 8 of the 52 receptor locations where noise levels are exceeded. TxDOT fails to provide any description of the types of impacts at those receptor locations being provided noise abatement. Both, the North and South EAs fail to fully and fairly disclose the noise impacts arising from the highway expansion in violation of NEPA and FHWA regulations.

58. TxDOT has failed to fully analyze the impacts that each project would have on the noise quality within their project areas. The projects all have significant impacts on noise and do not fully address the mitigation measures. Therefore, TxDOT should have prepared an EIS and its failure to do so is a violation of NEPA.

59. Additionally, the improper segmentation has led to TxDOT's failure to correctly study and analyze the environmental impacts of the three projects. Collectively, the I-35 Capital Express projects—North, Central, South—would significantly affect the environment. This includes impacts like noise, air, water, transit, local connectivity, and more. TxDOT failed to analyze the impacts of all three projects on the environment and prepare an EIS.

60. An EIS had not been conducted for the proposed projects in violation of CEQ and FHWA regulations, and thus in violation of NEPA. TxDOT acted arbitrarily and capriciously, and not in accordance with law when it decided to compose only an EA and not an EIS. Moreover, TxDOT acted arbitrarily and capriciously, and contrary to law when it elected not to prepare an EIS, and instead issued the December 2021 FONSIs. 5 U.S.C.A. § 706.

**CAUSE OF ACTION NO. 3: TxDOT VIOLATED NEPA BY FAILING TO TAKE A "HARD LOOK" AT CUMULATIVE IMPACTS**

61. Federal agencies are required by NEPA to take a "hard look" at the consequences of their actions in preparing detailed studies for projects that will significantly impact the environment and in deciding how much study is required. 42 U.S.C. § 4332(2)(C).

62. Cumulative impacts are defined by the CEQ as, "effects on the environment that result from the incremental effects of the action when added to the effects of other past, present, and reasonably foreseeable actions… Cumulative effects can result from individually minor but collectively significant actions taking place over a period of time." 40 C.F.R. § 1508.1(g)(3).

63. TxDOT determined that a cumulative impact analysis is not required for the North or South projects. As justification TxDOT stated that neither project would have a substantial direct or indirect impact on any resource. TxDOT also noted that impacts to waters of the United States, a resource in poor and declining health, would occur; however, impacts would not exceed

specified limits of the USACE NWPs. Lastly, TxDOT asserts that no other impacts to resources in poor and declining health would occur as a result of either project.

64. TxDOT specifically states that this project would have "minor" impacts on waters of the United States. However, has failed to analyze the effects that these two projects—I-35 North and South—would have when added to the effects of other actions. As mentioned above, the North project overlays the Edwards Aquifer Transition Zone and TxDOT has failed to analyze the impacts that the project may have to this water resource. Collectively I-35 North, Central, and South could have cumulative effects on the waters of the United States. TxDOT has refused to prepare cumulative impact analyses for the I-35 North and South projects, which is a violation of NEPA.

65. The North EA and the South EA fail to mention, much less analyze the cumulative impacts of each other as "past, present, and reasonably foreseeable actions" even though they were completed just days apart. And both EAs fail to mention, much less analyze the cumulative impacts in light of the pending Central project as "present, and reasonably foreseeable action[]." 40 C.F.R. § 1508.1(g)(3).

66. TxDOT failed to take a hard look at the consequences of the I-35 Capital Express projects. In particular, TxDOT failed to take a hard look at the cumulative impacts of the I-35 Capital Express projects. Therefore, TxDOT's actions were arbitrary, capricious, not in accordance with law, an abuse of discretion, and contrary to NEPA. 5 U.S.C.A. § 706.

**CAUSE OF ACTION NO. 4: TxDOT FAILED TO COMPLY WITH THE FULL DISCLOSURE REQUIREMENTS OF NATIONAL ENVIRONMENTAL POLICY ACT**

67. NEPA requires full and fair disclosure of environmental impacts of the proposed action as set out in the regulations of the CEQ. 40 C.F.R. § 1508.8.

68. To begin, TxDOT has not fully and fairly disclosed all possible impacts to harming the project areas' noise quality and water resources. TxDOT has a duty under NEPA to disclose and evaluate the impact of the expansion of I-35 on noise quality. TxDOT has not fully evaluated the adverse effects of the Project on the noise quality either during or after construction, resulting in a lack of full disclosure. TxDOT has also failed to fully and adequately examine alternative courses of action.

69. Additionally, NEPA and the CEQ regulations require that an EA discuss alternatives and the environmental impacts of the proposed action and alternatives. 40 C.F.R. § 1501.5(c)(2). In the North and South project EAs, TxDOT failed to fully and adequately examine, analyze, and disclose alternative courses of action as required. Both EAs fail to mention or analyze any other alternatives. Instead, only the proposed action and the no-build alternative are discussed. TxDOT "preliminarily eliminated" all other alternatives before the EAs and did not undertake any alternative analysis within their NEPA documentation. Other more unique alternatives were suggested at the public meetings that TxDOT held for the North and South projects. However, there is no discussion as to whether any of these suggested alternatives were evaluated.

70. The North and South EAs fail to include the evaluation of alternatives resulting in inadequate EAs and a violation of NEPA. TxDOT acted arbitrarily and capriciously, and contrary to law for publishing an EA that lacks a full and fair evaluation of alternatives and for deciding to move forward with the proposed alternative without making a full and fair evaluation of all alternatives.

71. TxDOT fails to examine the I-35 Capital Express projects' disproportionate impacts on low-income and minority populations in the North and South EAs. TxDOT has a duty

to address environmental justice. Exec. Order No. 12898, 59 C.F.R. § 7629 (1994). Environmental justice aims to address the disproportionate health impacts on minority and low-income communities.

72. In the North EA, TxDOT simply states that the displacement of businesses within the environmental justice ("EJ") community are not a significant disproportionate impact because those businesses do not specifically cater to EJ communities. The South EA explains that advanced notice of construction of the project will cure adverse impacts to the minority and low-income populations that are dispersed all throughout the project area. Both the North and South EAs fail to actually evaluate, analyze, and discuss the impacts that EJ communities will face. Thus, TxDOT has failed to fully and fairly disclose impacts on low-income and minority populations.

73. In addition, TxDOT has failed to analyze the I-35 Project's impacts on climate change. Neither the North nor South EA provide critical discussions related to climate change. For instance, TxDOT fails to provide any assessment or information regarding the emissions that may result from the increased traffic volumes caused by these projects. Therefore, TxDOT fails to fully and fairly disclose impacts on climate change.

74. The EAs of the North and South projects also do not acknowledge the impacts that may arise during construction. Impacts on congestion, connectivity, and mitigation measures need to be addressed; thus, it is a failure to fully disclose. TxDOT's actions and failure to fully and fairly disclose health impacts were arbitrary, capricious, not in accordance with law, an abuse of discretion, and contrary to NEPA. 5 U.S.C. § 706.

## VII.   RELIEF REQUESTED

75. Rethink35, TexPIRG, and Environment Texas respectfully request that this Court enter a judgment in favor, and:

   a. Declare that Defendants failed to complete an environmental impact statement that complies with NEPA;

   b. Declare that Defendants violated NEPA and the APA by improperly segmenting the I-35 Capital Express project into North, Central, and South portions;

   c. Declare that Defendants violated the APA and NEPA by failing to take a hard look at cumulative impacts resulting from the I-35 Capital Express projects;

   d. Declare the Defendants violated APA and NEPA by failing to take a hard look at significant environmental impacts resulting from the I-35 Capital Express projects; and

   e. Grant Plaintiff such other relief as may be necessary and appropriate, or as the Court deems just and proper.

June 26, 2022

Respectfully submitted,

IRVINE & CONNER PLLC

by: __/s/ Charles Irvine__
**Charles Irvine**
*Attorney in Charge*
Texas Bar No. 24055716
charles@irvineconner.com
**Janet Campos**
Texas Bar No. 24096157
janet@irvineconner.com
4709 Austin St.
Houston, Texas 77004
713.533.1704
713.524.5165 (fax)
**Attorneys for Rethink35, TexPIRG, and Environment Texas**

17